**EXHIBIT A**

EXHIBIT A

Cook County #21762

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - CHANCERY DIVISION

Christiana Trust, a division of Wilmington Savings Fund
Society, FSB, not in its individual capacity but as Trustee
of ARLP Trust

PLAINTIFF

Vs.

Patricia Rodriguez; Ricardo Rodriguez; Unknown
Owners and Nonrecord Claimants

DEFENDANTS

No. 2016CH00100
CALENDAR/ROOM 59
TIME 00:00
Owner Occupied

314 Fletcher Drive
Wheeling, IL 60090

## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS
FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP
TRUST, by and through its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the
defendants herein and, pursuant to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and names the persons
identified in the above caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a copy of the Mortgage. Attached as "EXHIBIT B" is a copy of the
Note. Attached as "EXHIBIT C" is a copy of the Loan Modification Agreement.

3. Information concerning said Mortgage:

    (A) Nature of the instrument: Mortgage.

    (B) Date of the Mortgage: 3/11/2008

    (C) Name of mortgagor(s):

        Patricia Rodriguez

    (D) Name of the original mortgagee:

        Citicorp Trust Bank, FSB

    (E) Date and Place of Recording or Registering:

        3/21/2008
        Office of the Recorder of Deeds of Cook County Illinois

    (F) Identification of Recording: Document No. 0808134015

**Page 1 of 4**

(G) Interest subject to the mortgage: Fee Simple.

(H) Amount of original indebtedness:

(1) Original Indebtedness: $220,278.70

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

ALL THAT PARCEL OF LAND IN CITY OF WHEELING, COOK COUNTY, STATE OF ILLINOIS, AS MORE FULLY DESCRIBED IN DEED DOC # 0313539071, ID# 03-10-103-022-0000, BEING KNOWN AND DESIGNATED AS LOT 22 IN BLOCK 2 IN DUNHURST SUBDIVISION NUMBER 4, BEING A SUBDIVISION OF PART OF THE E 1/2 OF THE NW 1/4 OF SECTION 10, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, AND ALSO PART OF THE SW 1/4 OF SECTION 3, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 24, 1956 AS DOCUMENT 16559719 IN COOK COUNTY, ILLINOIS. BY FEE SIMPLE DEED FROM NOOR MOHAMMAD AND RAHINA MOHAMMAD, HUSBAND AND WIFE AS SET FORTH IN DOC # 0313539071 DATED 04/16/2003 AND RECORDED 05/15/2003, COOK COUNTY RECORDS, STATE OF ILLINOIS.

**COMMONLY KNOWN AS:**     314 Fletcher Drive
                          Wheeling, IL 60090

**TAX PARCEL NUMBER:** 03-10-103-022-0000

(J) Mortgagors have not paid the monthly installments of principal, taxes, interest and insurance for 03/01/2015, through the present; the principal balance due on the Note and the Mortgage is $177,756.53, plus interest, costs, advances and fees. Interest accrues pursuant to the Note and any loan modification agreement, and the current per diem is $29.22.

(K) Name of present owner(s) of said premises:
     Patricia Rodriguez

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

(M) Names of defendants claimed to be personally liable for deficiency, if any:

Patricia Rodriguez and Ricardo Rodriguez.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208.

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R) Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Patricia Rodriguez; Ricardo Rodriguez;

4. Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

**WHEREFORE, THE PLAINTIFF REQUESTS:**

1.   A judgment of foreclosure and sale.

2.   An order granting a shortened redemption period, if sought.

3.   A personal judgment for deficiency, if applicable and sought, and only against parties who have signed the Note or monetary obligation which is the subject matter of this complaint, or persons who have assumed liability of the Note or monetary obligation which is the subject matter of this complaint, and who have not received a Chapter 7 bankruptcy discharge and who are not personally protected by the automatic stay at sale confirmation.

4.   An order granting possession, if sought.

5.   An order placing the mortgagee in possession or appointing a receiver, if sought.

6.   A judgment for attorneys' fees, costs and expenses, if sought.

7.   For the appointment of a Selling Officer, if deemed appropriate by this court.

8.   Such other and further relief as this court deems just.

Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust

BY: _____

      CODILIS & ASSOCIATES, P.C.
      One of its Attorneys

**Jill Milicev**
**ARDC# C209868**

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
14-15-13776

pleadings@il.cslegal.com

*PERSONAL INFORMATION REDACTED*

# Exhibit A

Return To:
Citicorp Trust Bank, fsb
Doc Processing Dept, MS 121
1000 Technology Drive
O'Fallon, MO  63368-2240

Doc#:   0808134015 Fee: $66.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 03/21/2008 08:33 AM  Pg: 1 of 16

Prepared By:
Citicorp Trust Bank, fsb
2150 Point Blvd.
Suite 500
Elgin, IL  60123

――――――――――――――― [Space Above This Line For Recording Data] ―――――――――――――――

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 11, 2008
together with all Riders to this document.
(B) "Borrower" is  PATRICIA RODRIGUEZ and RICARDO RODRIGUEZ, Tenants in Entirety

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  Citicorp Trust Bank, fsb

Lender is a  Federal Savings Bank
organized and existing under the laws of Delaware

ILLINOIS · Single Family · Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014  1/01

-6(IL) (0010).01
Page 1 of 15                    Initials: PR RL
VMP Mortgage Solutions, Inc.



Lender's address is 4500 Linden Hill Drive, Wilmington, DE 19808

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated March 11, 2008
The Note states that Borrower owes Lender Two Hundred Twenty Thousand Two Hundred Seventy
Eight & 70/100                                                                    Dollars
(U.S. $220,278.70            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 17, 2033
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule "A" |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: DR RR

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction]
of Cook [Name of Recording Jurisdiction]:

The Assessor's Parcel Number (Property Tax ID#) for the Real Property is 03-10-102-022-0000.
See Exhibit

Parcel ID Number: 03-10-102-022-0000      which currently has the address of
314 FLETCHER DR                        [Street]
            WHEELING           [City], Illinois    60090-    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(IL) (0010).01            Page 3 of 15        Initials: _____       Form 3014   1/01
                                                           CitiMortgage 3.2.13.21 V3

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-8(IL) (0010).01

Page 9 of 15

Initials: _PP_ _PP_

Form 3014 1/01

CitiMortgage 3.2.13.21 V3

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: PR RR

-6(IL) (0010).01    Page 10 of 15    Form 3014  1/01
CitiMortgage 3.2.13.21 V3

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
PATRICIA RODRIGUEZ                    -Borrower

_____ (Seal)
RICARDO RODRIGUEZ                     -Borrower

STATE OF ILLINOIS,     *Cook*
I, *Ernesto Maldonado*     , a Notary Public in and for said county and
state do hereby certify that

*Patricia Rodriguez and*
*Ricardo Rodriguez*

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said
instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
Given under my hand and official seal, this   *11ᵗʰ*   day of   *March  2008*

My Commission Expires: *12/14/10*

_____
Notary Public

OFFICIAL SEAL
ERNESTO MALDONADO
Notary Public - State of Illinois
My Commission Expires Dec 14, 2010

-6(IL) (0010).01                 Page 15 of 16              Initials: *PR RR*

Form 3014   1/01
CitiMortgage 3.2.13.21 V3

# SCHEDULE "A"

**Borrower:**   Patricia Rodriguez, Ricardo Rodriguez

**Property:**   314 FLETCHER DR
WHEELING, IL 60090

**Loan No:**

**Closing Date:** March 11, 2008

ALL THAT PARCEL OF LAND IN CITY OF WHEELING, COOK COUNTY, STATE OF ILLINOIS, AS MORE FULLY DESCRIBED IN DEED DOC # 0313539071, ID# 03-10-103-022-0000, BEING KNOWN AND DESIGNATED AS. LTO 22 IN BLOCK 2 IN DUNHURST SUBDIVISION NUMBER 4, BEING A SUBDIVISION OF PART OF THE E 1/2 OF THE NW 1/4 OF SECTION 10, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, AND ALSO PART OF THE SW 1/4 OF SECTION 3, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 24, 1956 AS DOCUMENT 16559719 IN COOK COUNTY, ILLINOIS. BY FEE SIMPLE DEED FROM NOOR MOHAMMAD AND RAHINA MOHAMMAD, HUSBAND AND WIFE AS SET FORTH IN DOC # 0313539071 DATED 04/16/2003 AND RECORDED 05/15/2003, COOK COUNTY RECORDS, STATE OF ILLINOIS.

PERSONAL INFORMATION REDACTED



**Exhibit B**

# NOTE

March 11, 2008          Wheeling          Illinois
[Date]                  [City]            [State]

314 FLETCHER DR, WHEELING, IL 60090
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 220,278.70          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Citicorp Trust Bank, fsb

I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal and shall accrue daily until the full amount of Principal has been paid based upon a yearly rate of  8.22378      %. Interest will be computed on the basis of a 360 day year.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.  Because interest accrues daily, if my monthly payment is not received by Lender by the date such payment is due, interest will continue to accrue until the day such payment is received by Lender.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my first monthly payment on  April 17, 2008           and on that day each month thereafter.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest computed to the date of payment before Principal. If, on  March 17, 2033        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  Citicorp Trust Bank, fsb, P.O. Box 371453, Pittsburgh, PA  15250-7453
                                        or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 1,732.93

**4. BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Modified Form 3200 1/01
Modified by Citicorp Trust Bank, fsb
400018 7/2006
Page 1 of 4          Initials:

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees (unless the property is located in West Virginia).

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor (and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below) if the property is located in Virginia).  "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb
400016 7/2008

Page 2 of 4

Modified Form 3200 1/01
Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. [The following provision applies to ALASKA loans only.]**
NOTICE OF OTHER REMEDIES
To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

[The following provision applies to FLORIDA loans only.]
DOCUMENTARY TAX
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

[The following provision applies to NEW HAMPSHIRE loans only.]
ATTORNEYS' FEES
Pursuant to New Hampshire Revised Statutes Annotated § 361-C:2, in the event that Borrower shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by Borrower, reasonable attorneys' fees shall be awarded to Borrower. Further, if Borrower shall successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by Lender, a court may withhold from Lender the entire amount or such portion of its attorneys' fees as the court shall consider equitable.

[The following provision applies to VERMONT loans only.]

NOTICE TO CO-SIGNER

YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____     _Patricia Rodriguez_____ (Seal)
                                PATRICIA RODRIGUEZ              -Borrower

_____     _Ricardo Rodrigo_____ (Seal)
                                RICARDO RODRIGUEZ              -Borrower

*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Citicorp Trust Bank, fsb                    Page 4 of 4                    Modified Form 3200 1/01
400015 7/2005



# NOTE ALLONGE

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

**Loan Number:** ███████████████████████

**Loan Date:__3/11/2008___  Original Loan Amount: $  220,278.70**

**Originator:  CITICORP TRUST BANK, FSB**
**Original Mortgagor:  PATRICIA RODRIGUEZ AND RICHARDO RODRIGUEZ**
**Property Address: 314 FLETCHER DR, WHEELING, IL 60090**

Pay to The Order of

_____

Without Recourse

CITIMORTGAGE, INC.

By: _____

Michael E. Wileman, Vice President

**Governing Law/Prepayment Penalty**
**Addendum to Note**

THIS GOVERNING LAW/PREPAYMENT PRNALTY ADDENDUM TO NOTE (the "Addendum") is made this ___11th___ day of ___March, 2008___, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of Citicorp Trust Bank, fsb _____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a mortgage/deed of trust/security agreement (the "Security Instrument") in favor of Lender dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    **Governing Law.**

      This Note will be governed by United States federal law and, to the extent United States federal law is inapplicable, then by the laws of the State of Delaware; except that, with regard to the perfection and enforcement of Lender's security interest in the Property, the Note and Security Instrument will be governed by the law of the state where the Property is located.

2.    **Prepayment Penalty.**

      Notwithstanding anything in the Note to the contrary, the "Borrower's Right to Prepay" paragraph in the Note is modified to read, in full, as follows:

"I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Within the first three (3) years from the date of this Note, if I prepay the balance of the Note in full, I agree to pay a prepayment penalty in an amount as follows:

Three percent (3%) of the unpaid Principal Balance of the Note prepaid prior to one year after the date of the Note.
Two percent (2%) of the unpaid Principal Balance of the Note prepaid from one year but prior to two years after the date of the Note.
One percent (1%) of the unpaid Principal Balance of the Note prepaid from two years but prior to three years after the date of the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment Amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes."

CF330GM 3/2005   ██████████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Governing Law/Prepayment Penalty Addendum to Note.

_Patricia Rodriguez_ (Seal)
PATRICIA RODRIGUEZ      Borrower

_Ricardo Rodriguez_ (Seal)
RICARDO RODRIGUEZ      Borrower

*(Sign Original Only)*

## TIMELY PAYMENT REWARDS ADDENDUM TO NOTE

THIS TIMELY PAYMENT REWARDS ADDENDUM TO NOTE is made this _____11th_____ day of __March_____, 2008___, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of __Citicorp Trust Bank, fsb_____ ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the _____11th_____ day of __March_____, 2008___ (the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.     TIMELY PAYMENT REWARDS RATE REDUCTION

Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third, or fourth anniversaries of the scheduled due date of the first full installment payment due under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate by _____zero & 50/100_____ percentage point (__.5_____%). Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note and Security Instrument before the date the next payment was due; and (b) has never been late by 3 months or more in making any monthly payments due under the Note. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on the first day of the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Timely Payment Rewards Addendum to Note.

_Patricia Rodriguez_ _____ (Seal)
PATRICIA RODRIGUEZ                     -Borrower

_Ricardo Rodriguez_ _____ (Seal)
RICARDO RODRIGUEZ                  -Borrower

*(Sign Original Only)*

CF00004 (26/81)

## ANNUAL PERCENTAGE RATE/PREPAYMENT CHARGE OPTION

Borrower: PATRICIA RODRIGUEZ, RICARDO RODRIGUEZ   Lender: Citicorp Trust Bank, fsb
4500 Linden Hill Drive
Wilmington, DE 18808

Account Number ███████

This Annual Percentage Rate/Prepayment Charge Option disclosure relates to Borrower's loan transaction with Lender, as indicated by the Account Number above, and to the terms of the Disclosure Statement, Note and Security Agreement that Borrower will sign at closing.

☐   _____/_____ (applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is __8.94____, and Borrower may make a full or partial prepayment of the unpaid principal balance at any time without a prepayment charge, as reflected in Borrower's Disclosure Statement, Note and Security Agreement.

☒   _PR_/_RR_ (applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is __8.44____, and Borrower's loan is subject to a prepayment charge according to the provisions in Borrower's Disclosure Statement, Note and Security Agreement.

Borrower acknowledges reading and selecting an annual percentage rate/prepayment charge option by providing Borrower's initials next to the applicable box checked above and signing below.

_Patricia Rodriguez_  3/11/08
PATRICIA RODRIGUEZ                     Date

_Ricardo Rodriguez_  3-11-8
RICARDO RODRIGUEZ                      Date

Original (Branch)                                    Copy (Customer)

████████████████████████████████████████

Borrower: PATRICIA RODRIGUEZ
RICARDO RODRIGUEZ

Lender: Citicorp Trust Bank, fsb
4500 Linden Hill Drive
Wilmington, DE 19808

Property: 314 FLETCHER DR
WHEELING, IL 60090-

Loan No: ▓▓▓▓▓

## ADDENDUM TO TRUTH IN LENDING DISCLOSURE STATEMENT

### PAYMENT WAIVER PROGRAM ("PWP")

THIS ADDENDUM TO TRUTH IN LENDING DISCLOSURE STATEMENT (the "Addendum") is made this _Fifth day of March, 2008_____, and is incorporated into and shall be deemed to amend and supplement the Truth in Lending Disclosure Statement provided to the undersigned ("Borrower"), by _____ _Citicorp Trust Bank, fsb_____ ("Lender") and dated the same date as this Addendum (the "Truth in Lending Disclosure Statement").

Borrower is not required to purchase Payment Waiver Protection to obtain credit. Lender's decision to grant credit will not be and is not affected by Borrower's decision to purchase or refusal to purchase optional Payment Waiver Protection.

Payment Waiver is an optional provision of Borrower's loan agreement and is described and defined in the Payment Waiver Program ("PWP") Addendum to Note, which governs Lender's agreement and Borrower's benefits. In return for a fee billed monthly and added to the scheduled monthly loan payments indicated in the Truth in Lending Disclosure Statement, and under certain conditions, Lender will waive the scheduled monthly payment on Borrower's loan and the PWP monthly fee for a period of time upon the occurrence of a Disability or Involuntary Unemployment. The Payment Waiver is not insurance and will not pay the outstanding account balance. Finance Charges accrue on the loan account during any Waiver Period. Borrower should refer to and inquire about the terms and conditions, including, without limitation, the monthly fee, terms, eligibility, exclusions, termination date, waiting period and maximum waiver limit, contained in the PWP Addendum to Note.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly fee in addition to the loan payment disclosed in the Truth in Lending Disclosure Statement.

Unless coverage has been declined (below), I/we request Payment Waiver Protection as described in the PWP Addendum to Note. It is understood that coverage as indicated below will extend solely to the Borrower(s) named on the PWP Addendum to Note (the "Covered BORROWER").

| | Disability and Involuntary Unemployment | Disability Only | Involuntary Unemployment Only | Borrower's Signature |
|---|---|---|---|---|
| First Borrower | N/A | N/A | N/A | NO COVERAGE |
| Second Borrower | N/A | N/A | N/A | NO COVERAGE |

PWP Monthly Fee*: $ 0.00 _____ First Year's Fee: $ 0.00 _____

*Accrued but unpaid fees, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay PWP fees may result in termination of coverage.

▓▓▓▓▓▓▓▓▓▓

GF400033 2/2006                    Page 1 of 2

# TIMELY PAYMENT REWARDS RIDER

THIS TIMELY PAYMENT REWARDS RIDER is made this ___11th_____ day of __March_____,
2008____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note to __Citicorp Trust Bank, fsb_____
("Lender") covering the Property described in the Security Instrument and located at:

314 FLETCHER DR WHEELING, IL 60090-_____
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.   TIMELY PAYMENT REWARDS RATE REDUCTION
     The Note provides for the reduction in Borrower's interest rate as follows:

     1.   TIMELY PAYMENT REWARDS RATE REDUCTION
          Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note
          (the "Note Rate") until the full amount of principal has been paid. However, if on
          any one of the second, third, or fourth anniversaries of the scheduled due date of
          the first full installment payment due under the Note (each, an "Anniversary Date")
          Borrower has demonstrated a Good Payment History, Lender agrees to decrease the
          Note Rate by _zero & 50/100_ percentage point (_$____%). Borrower will be
          deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made
          each of the most recent 24 consecutive monthly payments under the Note and
          Security Instrument before the date the next payment was due; and (b) has never
          been late by 3 months or more in making any monthly payments due under the
          Note. If Borrower demonstrates a Good Payment History, the new Note Rate will
          take effect on the earliest Anniversary Date on which Borrower has demonstrated a
          Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first
          monthly payment after the Rate Reduction Date, Borrower will pay the new amount
          as the monthly payment until the Maturity Date. Lender will decrease Borrower's
          Note Rate only one time during the term of the loan, provided Borrower
          demonstrates a Good Payment History on any one of the second, third, or fourth
          Anniversary Dates.

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Timely Payment Rewards Rider.

_Patricia Rodriguez_____ (Seal)
PATRICIA RODRIGUEZ                              -Borrower

_Ricardo Rodriguez_____ (Seal)
RICARDO RODRIGUEZ                              -Borrower
(Sign Original Only)

CF6060X3 (01/01)



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

7   If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8   You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

9   You understand and agree that:

   a   All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

   b   All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

   c   Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement..

   d   Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

   e   In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period.

   f   During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

   g   You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

   h   You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

   i   Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

_Patricia Rodriguez_
Patricia Rodriguez

Ocwen Loan Servicing, LLC

By: _____
Authorized Officer    Desmond Cummings

_Ricardo Rodriguez_
Ricardo Rodriguez

SEP 1 8 2014

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

Page 4 of 4

P2  RR

I/We hereby acknowledge reading and receiving a complete copy of this Addendum along with the Truth in Lending Disclosure Statement.

_____   3/11/08   _____   3-11-8
PATRICIA RODRIGUEZ            Date        RICARDO RODRIGUEZ            Date

_____             _____
                    Date                                      Date

GF400033 2/2005                        Page 2 of 2

PERSONAL INFORMATION REDACTED


**Exhibit C**



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners Is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

OCWEN

## LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 6/2/2014 , which modifies the terms of your home loan obligations as described in detail below:

A   the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Cook County, and

B   the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 314 Fletcher Dr, Wheeling, IL 60090-4542..

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1   In order for the terms of this modification to become effective, you promise to make an initial down payment ("Down Payment") of  $1,829.58 on or before 7/1/2014 and Two (2) equal monthly payments of principal and interest in the amount of  $1,344.23,  and any escrowed amount as outlined in section 3 below,  to Ocwen ("Trial Period") beginning on 8/1/2014, and thereafter due on same day of each succeeding month.

2   You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be  $180,000.00. Upon modification, your Note will become contractually current; however, fees and charges that were not included in this principal balance will be your responsibility.

3   You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument.  A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4   If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification").  However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5   After the Trial Period expiration, you promise to make payments of principal and interest, and, if applicable, any escrowed amount as outlined in section 3, on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full.

6   Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of 6.00000% . This rate will remain in effect until the maturity date of your loan.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally.



**EXHIBIT B**

EXHIBIT B

**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

**Visit our website at www.rushmorelm.com**
Telephone 888-504-6700

**MORTGAGE STATEMENT**
Statement Date: 08/11/2017

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053-2848

34124

| | |
|---|---|
| Account Number | |
| Payment Due Date | 09/01/2017 |
| Payments received after the statement date are not reflected. | |
| **Amount Due**(5) | **$56,858.05** |
| If payment is received after 09/16/2017, a $67.21 late fee will be added | |

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

## Account Information

| | |
|---|---|
| Property Address | 314 FLETCHER DR<br>WHEELING IL, 60090 |
| Outstanding Principal(3) | $177,756.53 |
| Deferred Balance(2) | $0.00 |
| Interest Rate | 6.00000% |
| Recoverable Advances(4) | $7,741.67 |
| Prepayment Penalty | NO |

## Explanation of Amount Due(6)

| | |
|---|---|
| Principal | $528.96 |
| Interest | $815.27 |
| Escrow (for Taxes and Insurance) | $468.22 |
| **Regular Monthly Payment** | **$1,812.45** |
| Total Fees and Charges | $672.10 |
| Overdue Payment | $54,373.50 |
| **Total Amount Due** | **$56,858.05** |
| Partial Payment (Unapplied)(1) | $0.00 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)(1) | $0.00 | $0.00 |
| Recoverable Advances(4) | $0.00 | $1.75 |
| Total | $0.00 | $1.76 |

(1) **Partial Payment:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

(2) **Deferred Balance:** The amount of your principal balance that is deferred as part of the terms of a loan modification.

(3) **Outstanding Principal:** This is your Loan balance only, not the payoff amount.

(4) **Recoverable Advances:** Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer funds rather than escrow funds which are recovered from you, the borrower.

(5) **Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

### If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused, and we treat all of our customers with respect, courtesy and integrity. We understand the importance of home-ownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you.



(Keep upper portion for your records)
Please mail so that your payment reaches us by the due date.

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PYMT AMOUNT |
|---|---|---|---|---|
| | 09/01/2017 | $56,858.05 | 09/16/2017 | $56,925.26 |

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053

| **Amount Due**(3) | |
|---|---|
| Due By 09/01/2017: | $56,858.05 |
| $67.21 late fee will be charged after 09/16/2017 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Make checks payable to:

**Rushmore Loan Management Services LLC**
**P.O. Box 514707**
**Los Angeles, CA 90051-4707**

0051280900090120177600406480000187966000018124 59

**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6700

MORTGAGE STATEMENT
Statement Date: 08/11/2017

Account Number: ▓▓▓▓▓▓▓▓

## Transaction Activity (02/01/2017 to 08/11/2017)

| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
|------|-------------|-----------|----------|--------|-------------|-------|-------|
| 02/03 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 02/08 | COUNTY TAX | | | -2,788.35 | | | -2,788.35 |
| 02/08 | ESCROW ADVANCE | | | 2,788.35 | | | 2,788.35 |
| 02/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 02/24 | ATTORNEY CORP ADV | | | | | 250.00 | 250.00 |
| 02/27 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 03/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 03/29 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 04/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 04/14 | HAZARD INS | | | -1,048.00 | | | -1,048.00 |
| 04/14 | ESCROW ADVANCE | | | 1,048.00 | | | 1,048.00 |
| 04/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 04/20 | ATTORNEY CORP ADV | | | | | 27.00 | 27.00 |
| 05/02 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 05/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 05/23 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 06/01 | MISCELLANEOUS | | | | | 6.44 | 6.44 |
| 06/01 | MISCELLANEOUS | | | | | 60.00 | 60.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 75.00 | 75.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 475.00 | 475.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 275.00 | 275.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 500.00 | 500.00 |
| 06/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/13 | COUNTY TAX | | | -3,200.02 | | | -3,200.02 |
| 07/13 | ESCROW ADVANCE | | | 3,200.02 | | | 3,200.02 |
| 07/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/28 | MISC CORP ADVANCE | | | | | 1,108.80 | 1.00 |
| 08/08 | PROP PRESERVATION | | | | | 11.50 | 11.50 |

## **Delinquency Notice**

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 08/11/2017, you are 894 days delinquent on your mortgage loan, dating to 03/01/2015.

Recent Account History

| | Payment due 08/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 07/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 06/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 05/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 04/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 03/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 02/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 01/01/17: Unpaid balance of $1,812.45 |
| * | Payment due 12/01/16: Unpaid balance of $1,812.45 |
| * | Payment due 11/01/16: Unpaid balance of $1,812.45 |
| * | Payment due 10/01/16: Unpaid balance of $1,812.45 |
| * | Payment due 09/01/16: Unpaid balance of $1,812.45 |
| * | |

**Total: $56,858.05 due. You must pay this amount to bring your loan current.**
**IF YOU ARE IN FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

## Your loan is in Foreclosure

The Date of the First Notice of Filing is 01/05/2016.

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call **800-569-4287**. We also encourage you to contact Rushmore Loan Management Services at 888-504-7300 to discuss assistance programs we may have available for you.

## STATE SPECIFIC NOTICES

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car. Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:

Irvin Borenstein
13111 E. Briarwood Ave. Ste #340
Centennial, CO 80112
Phone: 303-309-3839.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan.

"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550."

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE REGULATION 419

Rushmore Loan Management Services LLC is registered with the Superintendent of Financial Services for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services LLC with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729
Exempt Mortgage Loan Servicer Registration B501009

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

**GET LOAN INFORMATION INSTANTLY**

Call our convenient and easy Automated Information Hotline and receive up-to-date loan information. JUST CALL **1-888-504-6700** from a Touch Tone Phone. For your security, you will need to enter your loan number and the last 4 digits of your social security number when requested. Visit our website at www.rushmorelm.com.

**CUSTOMER SERVICE**
Monday – Thursday
6:00 a.m. to 7:00 p.m. Pacific Time
Friday
6:00 a.m. to 6:00 p.m. Pacific Time
Telephone   (888) 504-6700
Fax          (949) 453-9397

**HOME RETENTION ASSISTANCE**
Telephone   (888) 504-7300
Fax          (949) 341-2238

**PAYOFF STATEMENTS/INFORMATION**
Telephone   (888) 504-6700
Fax          (949) 453-0419

**HAZARD/HOMEOWNERS INSURANCE**
Telephone   (866) 735-2998
Fax          (866) 257-4121

**PROPERTY TAX INFORMATION /ASSISTANCE**
Telephone   (844) 323-3780

**COLLECTION DEPARTMENT**
Telephone   (888) 504-7200
Fax          (949) 453-8598

**WESTERN UNION QUICK COLLECT**
Code City:   RUSHMORE
Code State:   CA

**WEB SERVICES**
www.rushmorelm.com
General Loan Information
WEB Payment
Home Retention Assistance
Frequently Asked Questions
Forms

**OVERNIGHT PAYMENT ADDRESS:**
Rushmore Loan Management Services
15480 Laguna Canyon Rd., Suite 100
Irvine, California 92618

**SEND TAX BILLS FOR**
**ESCROWED/IMPOUNDED LOANS TO:**
Rushmore Loan Management Services
P.O. Box 961233
Ft. Worth, TX 76161-0233

**SEND INSURANCE BILLS AND POLICIES TO:**
Rushmore Loan Management Services
P.O. Box 692409
San Antonio, TX 78269-2409

**SEND CORRESPONDENCE TO:**
Rushmore Loan Management Services
Customer Service Department
P.O. Box 55004
Irvine, California 92619-5004

**SEND NOTICE OF ERROR RESOLUTION AND INFORMATION**
**REQUEST TO:**
Rushmore Loan Management Services
Compliance Department
P.O. Box 52262
Irvine, California 92619-2262

**STANDARD FEES**
Returned Check Fee *        $25.00

\* Except where restricted by state law
Other Fees are listed on www.rushmorelm.com

**ANNUAL PRIVACY NOTICE**
Rushmore Loan Management Services LLC provides our Annual Privacy Notice on-line, at our website: www.rushmorelm.com. A copy of the notice will be mailed to customers who request one by contacting our Customer Service Department at 888-504-6700, or by sending a written request to our Customer Service Department at P.O. Box 55004, Irvine, CA 92619-5004. The information in the Notice has not changed from last year.

Important Notice: Under the Fair Credit Reporting Act, you have the right to notify us if you believe we have reported inaccurate information about your account to any Consumer Reporting Agency. Such notices should be sent in writing and include your complete name, current address, social security number, account number, specific item of dispute and reason why you believe the information reported is in error. Send your notice to: P.O. Box 55004, Irvine, CA 92619-5004

**Housing Counselor Resources**
The U.S. Department of Housing and Urban Development (HUD) sponsors non-profit homeownership counseling agencies across the country. Call 800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of HUD-approved agencies in your area.

# MAILING ADDRESS AND PHONE NUMBER CHANGE REQUEST

Mailing Address

**EXHIBIT C**

EXHIBIT C



**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

**Visit our website at www.rushmorelm.com**
**Telephone 888-504-6700**

**MORTGAGE STATEMENT**
Statement Date: 09/12/2017

| | |
|---|---|
| Account Number | ■■■■■■■ |
| Payment Due Date | 10/01/2017 |
| *Payments received after the statement date are not reflected* | |
| **Amount Due(5)** | **$58,737.71** |
| *If payment is received after 10/16/2017, a $67.21 late fee will be charged* | |

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053-2848

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

### Account Information

| | |
|---|---|
| Property Address | 314 FLETCHER DR<br>WHEELING IL 60090 |
| Outstanding Principal(3) | $177,756.53 |
| Deferred Balance(2) | $0.00 |
| Interest Rate | 6.00000% |
| Recoverable Advances(4) | $7,764.67 |
| Prepayment Penalty | NO |

### Explanation of Amount Due(5)

| | |
|---|---|
| Principal | $531.60 |
| Interest | $812.63 |
| Escrow (for Taxes and Insurance) | $468.22 |
| **Regular Monthly Payment** | **$1,812.45** |
| Total Fees and Charges | $739.31 |
| Overdue Payment | $56,18_.95 |
| **Total Amount Due** | **$58,737.71** |
| Partial Payment (Unapplied)(1) | $0.00 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)(1) | $0.00 | $0.00 |
| Recoverable Advances(4) | $0.00 | $1.75 |
| Total | $0.00 | $1.75 |

(1) **Partial Payment:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

(2) **Deferred Balance:** The amount of your principal balance that is deferred as part of the terms of a loan modification.

(3) **Outstanding Principal:** This is your Loan balance only, not the payoff amount.

(4) **Recoverable Advances:** Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer funds rather than escrow funds which are recovered from you, the borrower.

(5) **Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

### If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore customers focused, and we treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you.



(Keep upper portion for your records)
Please mail so that your payment reaches us by the due date.

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PYMT AMOUNT |
|---|---|---|---|---|
| ■■■■■ | 10/01/2017 | $58,737.71 | 10/16/2017 | $58,804.92 |

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053

| Amount Due(5) | |
|---|---|
| Due By 10/01/2017: | $58,737.71 |
| $67.21 late fee will be charged after 10/16/2017 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Make checks payable to:

**Rushmore Loan Management Services LLC**
**P.O. Box 514707**
**Los Angeles, CA 90051-4707**



**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6700

**MORTGAGE STATEMENT**
Statement Date: 09/12/2017

Account Number ▓▓▓▓▓▓▓▓

## Transaction Activity (03/01/2017 to 09/12/2017)

| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
|---|---|---|---|---|---|---|---|
| 03/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 03/29 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 04/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 04/14 | HAZARD INS | | | -1,048.00 | | | -1,048.00 |
| 04/14 | ESCROW ADVANCE | | | 1,048.00 | | | 1,048.00 |
| 04/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 04/20 | ATTORNEY CORP ADV | | | | | 27.00 | 27.00 |
| 05/02 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 05/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 05/23 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 06/01 | MISCELLANEOUS | | | | | 6.44 | 6.44 |
| 06/01 | MISCELLANEOUS | | | | | 60.00 | 60.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 75.00 | 75.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 475.00 | 475.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 275.00 | 275.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 500.00 | 500.00 |
| 06/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/13 | COUNTY TAX | | | -3,200.02 | | | -3,200.02 |
| 07/13 | ESCROW ADVANCE | | | 3,200.02 | | | 3,200.02 |
| 07/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/28 | MISC CORP ADVANCE | | | | | 1,108.80 | 1.00 |
| 08/08 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 08/14 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 08/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 08/25 | PROP PRESERVATION | | | | | 11.50 | 11.50 |

---

## **Delinquency Notice**

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 09/12/2017, you are 926 days delinquent on your mortgage loan, dating to 03/01/2015.

Recent Account History

| | | |
|---|---|---|
| * | Payment due 09/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 08/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 07/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 06/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 05/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 04/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 03/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 02/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 01/01/17: | Unpaid balance of $1,812.45 |
| * | Payment due 12/01/16: | Unpaid balance of $1,812.45 |
| * | Payment due 11/01/16: | Unpaid balance of $1,812.45 |
| * | Payment due 10/01/16: | Unpaid balance of $1,812.45 |

**Total: $58,737.71 due. You must pay this amount to bring your loan current. IF YOU ARE IN FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

---

## Your loan is in Foreclosure

The Date of the First Notice of Filing is 01/05/2016.

---

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the **U.S. Department of Housing and Urban Development (HUD)**. For a list of homeownership counselors or counseling organizations in your area, go to **http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287**. We also encourage you to contact **Rushmore Loan Management Services** at **888-504-7300** to discuss assistance programs we may have available for you.

## STATE SPECIFIC NOTICES

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car. Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:

Irvin Borenstein
13111 E. Briarwood Ave. Ste #340
Centennial, CO 80112
Phone: 303-309-3839.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan.

"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550."

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE REGULATION 419

Rushmore Loan Management Services LLC is registered with the Superintendent of Financial Services for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services LLC with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729
Exempt Mortgage Loan Servicer Registration B501009

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

**GET LOAN INFORMATION INSTANTLY**
Call our convenient and easy Automated Information Hotline and receive up-to-date loan information JUST CALL 1-888-504-6700 from a Touch Tone Phone. For your security, you will need to enter your loan number and the last 4 digits of your social security number when requested. Visit our website at www.rushmorelm.com.

**CUSTOMER SERVICE**
Monday – Thursday
6:00 a.m. to 7:00 p.m. Pacific Time
Friday
6:00 a.m. to 6:00 p.m. Pacific Time
Telephone   (888) 504-6700
Fax   (949) 453-9397

**HOME RETENTION ASSISTANCE**
Telephone   (888) 504-7300
Fax   (949) 341-2626

**PAYOFF STATEMENTS/INFORMATION**
Telephone   (888) 504-6700
Fax   (949) 453-0419

**HAZARD/HOMEOWNERS INSURANCE**
Telephone   (866) 735-2958
Fax   (866) 257-4121

**PROPERTY TAX INFORMATION /ASSISTANCE**
Telephone   (844) 323-3780

**COLLECTION DEPARTMENT**
Telephone   (888) 504-7200
Fax   (949) 453-6598

**WESTERN UNION QUICK COLLECT**
Code City   RUSHMORE
Code State   CA

**WEB SERVICES**
www.rushmorelm.com
General Loan Information
WEB Payment
Home Retention Assistance
Frequently Asked Questions
Forms

**OVERNIGHT PAYMENT ADDRESS:**
Rushmore Loan Management Services
15480 Laguna Canyon Rd., Suite 100
Irvine, California 92618

**SEND TAX BILLS FOR**
**ESCROWED/IMPOUNDED LOANS TO:**
Rushmore Loan Management Services
P.O. Box 961233
Ft. Worth, TX 76161-0233

**SEND INSURANCE BILLS AND POLICIES TO:**
Rushmore Loan Management Services
P.O. Box 692409
San Antonio, TX 78269-2409

**SEND CORRESPONDENCE TO:**
Rushmore Loan Management Services
Customer Service Department
P.O. Box 55004
Irvine, California 92619-5004

**SEND NOTICE OF ERROR RESOLUTION AND INFORMATION**
**REQUEST TO:**
Rushmore Loan Management Services
Compliance Department
P.O. Box 52262
Irvine, California 92619-2262

**STANDARD FEES**
Returned Check Fee *    $25.00

* Except where restricted by state law
Other Fees are listed on www.rushmorelm.com

**ANNUAL PRIVACY NOTICE**
Rushmore Loan Management Services LLC provides our Annual Privacy Notice on-line at our website: www.rushmorelm.com. A copy of the notice will be mailed to customers who request one by contacting our Customer Service Department at 888-504-6700, or by sending a written request to our Customer Service Department at P.O. Box 55004, Irvine, CA 92619-5004. The information in the Notice has not changed from last year.

Important Notice: Under the Fair Credit Reporting Act, you have the right to notify us if you believe we have reported inaccurate information about your account to any Consumer Reporting Agency. Such notices should be sent in writing and include your complete name, current address, social security number, account number, specific item of dispute and reason why you believe the information reported is in error. Send your notice to: P.O. Box 55004, Irvine, CA 92619-5004

**Housing Counselor Resources**
The U.S. Department of Housing and Urban Development (HUD) sponsors non-profit homeownership counseling agencies across the country. Call 800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of HUD-approved agencies in your area.

# MAILING ADDRESS AND PHONE NUMBER CHANGE REQUEST

Mailing Address
_____

City                              State        Zip Code

Home Phone Number               Business Phone Number

**EXHIBIT D**

**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6700

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053-2848

MORTGAGE STATEMENT
Statement Date: 10/11/2017

| Account Number | |
|---|---|
| Payment Due Date | 11/01/2017 |
| Payments received after the statement date are not reflected | |
| **Amount Due**(5) | **$60,617.37** |
| If payment is received after 11/16/2017, a $67.21 late fee will be charged. | |

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

## Account Information

| | |
|---|---|
| Property Address | 314 FLETCHER DR WHEELING IL, 60090 |
| Outstanding Principal(3) | $177,756.53 |
| Deferred Balance(2) | $0.00 |
| Interest Rate | 6.00000% |
| Recoverable Advances(4) | $8,785.17 |
| Prepayment Penalty | NO |

## Explanation of Amount Due(5)

| | |
|---|---|
| Principal | $53.26 |
| Interest | $809.97 |
| Escrow (for Taxes and Insurance) | $468.22 |
| **Regular Monthly Payment** | **$1,812.45** |
| Total Fees and Charges | $806.52 |
| Overdue Payment | $57,998.40 |
| **Total Amount Due** | **$60,617.37** |
| Partial Payment (Unapplied)(1) | $0.00 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)(1) | $0.00 | $0.00 |
| Recoverable Advances(4) | $0.00 | $1.75 |
| Total | $0.00 | $1.75 |

(1) **Partial Payment:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

(2) **Deferred Balance:** The amount of your principal balance that is deferred as part of the terms of a loan modification.

(3) **Outstanding Principal:** This is your Loan balance only, not the payoff amount.

(4) **Recoverable Advances:** Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer-funds rather than escrow funds which are recovered from you, the borrower

(5) **Amount Due:** IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused, and we treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communications is a key to our relationship with you.



(Keep upper portion for your records)
Please mail so that your payment reaches us by the due date.

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PYMT AMOUNT |
|---|---|---|---|---|
| | 11/01/2017 | $60,617.37 | 11/16/2017 | $60,684.58 |

| Amount Due(6) | |
|---|---|
| Due By 11/01/2017: | $60,617.37 |
| $67.21 late fee will be charged on after 11/16/2017 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Patricia Rodriguez
Ricardo Rodriguez
6321 Dempster St # 220
Morton Grove, IL 60053

Make checks payable to:

Rushmore Loan Management Services LLC
P.O. Box 514707
Los Angeles, CA 90051-4707

005128090011012017760040648000001879660000181 2455

**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6700

MORTGAGE STATEMENT
Statement Date: 10/11/2017

Account Number:

## Transaction Activity (04/01/2017 to 10/11/2017)

| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
|------|-------------|-----------|----------|--------|-------------|-------|-------|
| 04/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 04/14 | HAZARD INS | | | -1,048.00 | | | -1,048.00 |
| 04/14 | ESCROW ADVANCE | | | 1,048.00 | | | 1,048.00 |
| 04/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 04/20 | ATTORNEY CORP ADV | | | | | 27.00 | 27.00 |
| 05/02 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 05/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 05/23 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 06/01 | MISCELLANEOUS | | | | | 6.44 | 6.44 |
| 06/01 | MISCELLANEOUS | | | | | 60.00 | 60.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 75.00 | 75.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 475.00 | 475.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 275.00 | 275.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 06/07 | ATTORNEY CORP ADV | | | | | 500.00 | 500.00 |
| 06/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/13 | COUNTY TAX | | | -3,200.02 | | | -3,200.02 |
| 07/13 | ESCROW ADVANCE | | | 3,200.02 | | | 3,200.02 |
| 07/17 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 07/28 | MISC CORP ADVANCE | | | | | 1,108.80 | 1.00 |
| 08/08 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 08/14 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 08/16 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 08/25 | PROP PRESERVATION | | | | | 11.50 | 11.50 |
| 09/13 | ATTORNEY CORP ADV | | | | | 9.00 | 9.00 |
| 09/13 | ATTORNEY CORP ADV | | | | | 250.00 | 250.00 |
| 09/13 | ATTORNEY CORP ADV | | | | | 525.00 | 525.00 |
| 09/13 | ATTORNEY CORP ADV | | | | | 150.00 | 150.00 |
| 09/13 | ATTORNEY CORP ADV | | | | | 75.00 | 75.00 |
| 09/18 | LATE CHARGE ASSESS | | | | 67.21 | | |
| 10/04 | PROP PRESERVATION | | | | | 11.50 | 11.50 |

## **Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 10/11/2017, you are 955 days delinquent on your mortgage loan, dating to 03/01/2015.

Recent Account History

| | |
|---|---|
| • Payment due 10/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 09/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 08/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 07/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 06/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 05/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 04/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 03/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 02/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 01/01/17: | Unpaid balance of $1,812.45 |
| • Payment due 12/01/16: | Unpaid balance of $1,812.45 |
| • Payment due 11/01/16: | Unpaid balance of $1,812.45 |
| • | **Total: $60,617.37 due.  You must pay this amount to bring your loan current.** |

**IF YOU ARE IN FORECLOSURE OR BANKRUPTCY,** the amount listed here may not be the full amount necessary to bring your account current.  To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement.

## Your loan is in Foreclosure

The Date of the First Notice of Filing is 01/05/2016.

## If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the **U.S. Department of Housing and Urban Development (HUD)**. For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call **800-569-4287**. We also encourage you to contact **Rushmore Loan Management Services** at **888-504-7300** to discuss assistance programs we may have available for you

**STATE SPECIFIC NOTICES**

**The following notice applies to California residents only:**

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (382-4357) or www.ftc.gov.

**The following notice applies to Colorado residents only:**

Please note: A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coag.gov/car. Please be advised that you can reach the Colorado Foreclosure Hotline at 1-877-601-HOPE (601-4673).

Local Rushmore Loan Management Services LLC Agent for Colorado Residents:

Irvin Borenstein
13111 E. Briarwood Ave. Ste #340
Centennial, CO 80112
Phone: 303-309-3839.

**The following notice applies to Massachusetts residents only:**

Notice of IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the creditor.

**The following notice applies to Texas residents only:**

Statement: Pursuant to Texas Finance Code Chapter 158.101, a registrant shall provide to the borrower of each residential mortgage loan the following notice not later than the 30th day after the registrant commences servicing the loan.

"COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 North Lamar, Suite 201, Austin, Texas 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550."

**The following notice applies to New York residents only:**

NOTICE PURSUANT TO NEW YORK STATE REGULATION 419

Rushmore Loan Management Services LLC is registered with the Superintendent of Financial Services for the State of New York. A borrower may file a complaint about Rushmore Loan Management Services LLC with the New York State Department of Financial Services. A borrower may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

NMLS Unique ID Number 185729
Exempt Mortgage Loan Servicer Registration B501009

**ADDITIONAL NOTICES**

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

**GET LOAN INFORMATION INSTANTLY**
Call our convenient and easy Automated Information Hotline and receive up-to-date loan information   JUST CALL **1-883-504-6700** from a Touch Tone Phone. For your security, you will need to enter your loan number and the last 4 digits of your social security number when requested. Visit our website at www.rushmorelm.com.

**CUSTOMER SERVICE**
Monday – Thursday
6:00 a.m. to 7:00 p.m. Pacific Time
Friday
6:00 a.m. to 6:00 p.m. Pacific Time
Telephone    (888) 504-6700
Fax              (949) 453-9397

**HOME RETENTION ASSISTANCE**
Telephone    (888) 504-7300
Fax              (949) 341-2238

**PAYOFF STATEMENTS/INFORMATION**
Telephone    (888) 504-6700
Fax              (949) 453-0419

**HAZARD/HOMEOWNERS INSURANCE**
Telephone    (866) 735-2998
Fax              (866) 257-4121

**PROPERTY TAX INFORMATION /ASSISTANCE**
Telephone    (844) 323-3780

**COLLECTION DEPARTMENT**
Telephone    (888) 504-7200
Fax              (949) 453-8598

**WESTERN UNION QUICK COLLECT**
Code City:      RUSHMORE
Code State:    CA

**WEB SERVICES**
www.rushmorelm.com
General Loan Information
WEB Payment
Home Retention Assistance
Frequently Asked Questions
Forms

**OVERNIGHT PAYMENT ADDRESS:**
Rushmore Loan Management Services
15480 Laguna Canyon Rd , Suite 100
Irvine, California 92618

**SEND TAX BILLS FOR ESCROWED/IMPOUNDED LOANS TO:**
Rushmore Loan Management Services
P.O. Box 961233
Ft. Worth, TX 76161-0233

**SEND INSURANCE BILLS AND POLICIES TO:**
Rushmore Loan Management Services
P.O. Box 692409
San Antonio, TX 78269-2409

**SEND CORRESPONDENCE TO:**
Rushmore Loan Management Services
Customer Service Department
P.O. Box 55004
Irvine, California 92619-5004

**SEND NOTICE OF ERROR RESOLUTION AND INFORMATION REQUEST TO:**
Rushmore Loan Management Services
Compliance Department
P.O. Box 52262
Irvine, California 92619-2262

**STANDARD FEES**
Returned Check Fee *              $25.00

* Except where restricted by state law
Other Fees are listed on www.rushmorelm.com

**ANNUAL PRIVACY NOTICE**
Rushmore Loan Management Services LLC provides our Annual Privacy Notice on-line, at our website,  www.rushmorelm.com   A copy of the notice will be mailed to customers who request one by contacting our Customer Service Department at 888-504-6700, or by sending a written request to our Customer Service Department at P.O. Box 55004, Irvine, CA 92619-5004.  The information in the Notice has not changed from last year.

Important Notice: Under the Fair Credit Reporting Act, you have the right to notify us if you believe we have reported inaccurate information about your account to any Consumer Reporting Agency.  Such notices should be sent in writing and include your complete name, current address, social security number, account number, specific item of dispute and reason why you believe the information reported is in error. Send your notice to:  P.O. Box 55004, Irvine, CA 92619-5004

**Housing Counselor Resources**
The U.S. Department of Housing and Urban Development (HUD) sponsors non-profit homeownership counseling agencies across the country.  Call 800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of HUD-approved agencies in your area.

# MAILING ADDRESS AND PHONE NUMBER CHANGE REQUEST

Mailing Address

City

State            Zip Code

Home Phone Number

Business Phone Number