# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PATRICIA RODRIGUEZ, Individually and On Behalf of a Class, | )<br>)<br>) |
| PLAINTIFF, | ) Case No.: 18-cv-1015<br>) |
| v. | ) Honorable Robert M. Dow, Jr.<br>) |
| RUSHMORE LOAN MANAGEMENT SERVICES LLC, | )<br>)<br>)<br>) |
| DEFENDANT. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT RUSHMORE LOAN MANGEMENT SERVICES, LLC'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, via his attorneys The Law Office of M. Kris Kasalo, Ltd, in response to Defendant Rushmore Loan Management Services, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Compliant and Incorporated Memorandum of Law, states as follows:

## INTRODUCTION

Defendant Rushmore Loan Management Services, LLC ("Rushmore") has filed a motion to dismiss Plaintiff's First Amended Complaint arguing that Plaintiff's claims should be dismissed because, a Rushmore's argument goes, Rushmore was alleged to have violated the FDCPA "by sending her periodic account statements that contain both too much information (late fees due upon reinstatement) and too little information (no exact attorneys' fees figure)." Dkt.#30, p.1.

Rushmore incorrectly recasts the issues. Contrary to its reading of Plaintiff's complaint, the violations alleged have less to do with the amount of information provided than they have to do with the accuracy of said information it provided to Plaintiff, which was both false and

material. Specifically, Rushmore cannot impose late charges for failure to make monthly payments after a loan has been accelerated and where Plaintiff did not reinstate her mortgage loan, though it repeatedly threatened to do so if said payments were not received by dates certain.

Rushmore presents various arguments for dismissal, none of which support the same. First, Plaintiff's claims do not stem from an alleged breach of the Mortgage, but from violation of the FDCPA. The Notice and Cure provision is thus inapplicable, since it only applies to a breach of the Mortgage.

Second assuming arguendo that the ;provision applied, which it does not, Rushmore urges dismissal on the basis that Plaintiff failed to comply with the Notice and Cure provision that is contained in the Mortgage. This is incorrect, however, as reference to the Loan Servicer (here Rushmore) is excluded from the provision, which is limited to claims between the Lender and Borrower, even though the very same paragraph (paragraph 20 of the Mortgage) containing the provision expressly references the Loan Servicer as to other matters relating to the collection of the loan. The rule of *expressio unius est exclusio alterius* thus requires that Rushmore be excluded from benefitting from application of the Notice and Cure provision.

Third, Rushmore's argument that its "TILA-mandated account statements are informational; they are not communications sent in connection with the collection of a debt" fails for two reasons. The first reason is that if the account statements are "TILA-mandated" as Rushmore asserts, then they were sent pursuant to the requirements of TILA, and not pursuant to any party's actions pursuant to the Mortgage, or any duty owed by reason of the same. The Notice and Cure provision thus does not apply. The second reason is that the statements mailed to Plaintiff are not "informational" since they each expressly state that it is an attempt to collect a debt, each contains payment deadlines, each demands payment, and each threatens consequences

if payment is not made—elements that if present have been found to trigger the protections of the FDCPA under 7th circuit precedent.

Fourth, Rushmore argues that it is immune to FDCPA liability because it used a template provided by the CFPB: Bulletin 2013-12. Rushmore acknowledges, however, that Bulletin 2013-12 was issued only in connection with a scenario where a cease-communication request has been made. No cease-communication was ever made in this case, and Plaintiff's claims are in no way premised on such a communication being made. Nor can the Bulletin even be considered by the Court as Rushmore has filed a Rule 12(b)(6) Motion. The argument is thus a red-herring, and should be disregarded.

Finally, Rushmore's spurious argument that the statements sent to Plaintiff each provided a reinstatement amount is false, and the falsity is evident from Rushmore's admission that further amounts, beyond the amounts stated as being the "Total Amount Due", were owed. As the amounts stated as being owed were admittedly not the "Total" amount due, Rushmore's misrepresentation that it *is* all that is owed violates the FDCPA, and further supports that the amounts stated were not the amounts required to reinstate the loan. Nor did Plaintiff ever seek to reinstate. In the absence of reinstatement, the 7th Circuit case of Rizzo supports that Rushmore violated the FDCPA.

I. **Whether Rushmore May Charge and Threaten to Collect Late Fees In The Circumstances Alleged in the Amended Complaint Does Not arise from the Mortgage**

Rushmore argues that the lawsuit stems from Rushmore's actions pursuant to the Mortgage. Specifically, Rushmore states that "Section 19 of the mortgage requires Rodriguez to pay "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred" in order to reinstate. (Id. at § 19)." Dkt.#30, p.5-6.

The provision only applies if Rushmore breached any judicial action "that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument…" Dkt.# 19, (Exhibit A to First Amended Complaint, ¶ 20 to Mortgage. Here, however, the Mortgage does not in any way provide for the circumstances under which late fees may be applied, and in which amount; Rushmore does not identify any provision dealing with the point. In fact, in the absence of the FDCPA, there would be no suit. *St. Breux v. United States Bank*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013).

Moreover, in attempting to convince the Court that the account statement sent to Plaintiff are "informational", Rushmore even admits that the communications were not sent due to any duties imposed by the Mortgage. Specifically, Rushmore expressly states that "Rushmore's **TILA-mandated** account statements are informational". Dkt.#30, p.6. (emphasis added). If the statements are "TILA-mandated", as Rushmore states, then they were not mailed pursuant to any duty arising under the Mortgage. In other words, the mailing of the same did not "arise(s) from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument…" pursuant to any duty arising out of the Mortgage. The claim is thus not directly related to the Mortgage, so the Notice and Cure provision does not apply.

Indeed, nowhere does Plaintiff assert that the Lender "breached any provision" of the Mortgage, which is required for the Notice and Cure provision to apply. (Exhibit A to First Amended Complaint, ¶ 20 to Mortgage). Plaintiff's consumer protection claims in this judicial action, albeit related to late payments asserted to be due under the Note, do not allege a breach of the mortgage or any duty arising therefrom; rather, these claims arise from alleged violations of

the FDCPA. *Foster v. Green Tree Servicing, LLC*, No. 8:15-cv-1878-T-27MAP, 2017 U.S. Dist. LEXIS 182740, at *7 (M.D. Fla. Nov. 2, 2017). Accordingly, Plaintiff was not required to provide Notice and an opportunity to cure.

**II.      Assuming *Arguendo* the Notice and Cure Provision Applies, the Clear, Unambiguous Language of The Notice and Cure Provision Cited by Rushmore Would Apply Only to Actions as Between the Lender and Borrower, Not the Borrower and the Servicer**

Rushmore argues that the Court should dismiss the Amended Complaint in its entirety because the Plaintiff has failed to give Rushmore notice of their claims and an opportunity to take corrective action, as Rushmore's argument goes, as required by the Mortgage. Dkt. #30, p. 4. Rushmore argues, specifically, that it is a "Servicer", and thus an assign of the Lender—the Notice and Cure provision thus extends to issues between the Borrower and Lender. In support, Rushmore specifically cites to paragraph 20 of the Mortgage as follows:

> **Neither Borrower nor Lender may commence … any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.**

(Dkt.#30, p. 4).

What is missing from the quoted reference to the Mortgage is as important as it is fatal to Rushmore's argument. That is, Rushmore's selective reproduction of paragraph 20 eliminates important terms which doom its position. The relevant, omitted terms of paragraph 20 of the Mortgage are as follows:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance**

> **The Note or a partial Interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.**
>
> **Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.**

(Exhibit A to First Amended Complaint, ¶ 20 to Mortgage).

Because the Plaintiff did not provide any notice to Rushmore prior to initiating this action, Rushmore argues that she has failed to satisfy a condition precedent and that this action is improper. Plaintiff disagrees. Importantly, the section of paragraph 20 conveniently omitted by Rushmore defines "Loan Servicer" as the entity that collects periodic payments "due under the Note, this Security Instrument, and Applicable Law," yet only the "Borrower" and "Lender" are referenced as the entities that are enjoined from commencing a judicial action "that arises from the other party's actions…". The Loan Servicer is repeatedly referenced throughout paragraph 20 in connection with other duties, yet by the express terms of the provision **only** the Borrower and Lender are enjoined from commencing a judicial action unless notice is given to the other party.

Here, the "judicial action" is by the Borrower against the Loan Servicer, not against the Lender. The actions thus does not arise from either the Lender or the Borrower's actions, and is thus inapplicable. Moreover, as the Loan Servicer is referenced throughout the provision— yet only the Borrower and Lender are referenced as being enjoined from filing a judicial action as to each other without first providing notice—the Notice and Cure provision binds the Borrower and the Lender, not the Borrower and the Loan Servicer. The intent of the parties is evidenced by the omission of Loan Servicer to the notice requirement; such requirement thus does not apply to a claim, as that brought here, by the Borrower as to the *Loan Servicer*. As the parties contemplated that a Servicer would be accepting payments from the Borrower at the time of entry into the Mortgage and Note, since the Loan Servicer is expressly referenced in the Mortgage, the absence of reference to the Loan Servicer in the Notice and Cure provision clearly reveals that the Loan Servicer was not intended to be subject to the same, and thus was expressly excluded.

That paragraph 20 of the Mortgage means what it unambiguously says (that the Borrower and Lender each are required to give the other notice of claims brought by each, against the other) is merely a particular application of the rule of *expressio unius est exclusio alterius. Delta Mining Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1405 (7th Cir. 1994), citing *Plumbers and Steamfitters Local 150 v. Vertex Const. Co.,* 932 F.2d 1443, 1449 (11th Cir. 1991). That is, the doctrine of *expressio unius est exclusio alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded. *Id*. Since the provision provides that "Neither Borrower nor Lender may commence…any judicial action…that arises from the other party's actions…", the Loan Servicer is conspicuously omitted from the requirement, even though said Loan Servicer was indeed defined and referenced in the paragraph and sentence, respectively, preceding the Notice and Cure provision. Applying the

doctrine, by being excluded from the provision, the Loan Servicer was not intended to be an entity to which the provision applies.

### III. Rushmore's Communications Were Sent in Connection with the Collection of a Debt

Rushmore next argues that none of its communications were sent in connection with the collection of a debt as the mailings were "informational". Dkt.#30, p. 6. This is incorrect.

The FDCPA "mak[es] clear that the statute does not apply to every communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010). Instead, to be actionable, a communication must be made "in connection with the collection of any debt." *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir. 1998). To determine if this has occurred, the court must conduct a "commonsense inquiry" by considering whether the communication contains a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications between the parties. *Gburek*, 614 F.3d at 385-86. This inquiry is inherently fact-specific, and must look to the specific content of the communication at issue. *Mavroff v. Kohn Law Firm S.C.*, No. 15-CV-837, 2015 U.S. Dist. LEXIS 172940, 2015 WL 9581763, at *3 (E.D. Wis. Dec. 30, 2015).

Rushmore contends that its communications with Plaintiff were not made in connection with the collection of a debt as they were merely informational, and it cites to various District Court opinions from Florida and New York, that are factually inapposite, to support its position. In so doing, Rushmore completely ignores the mandatory precedent enunciated in *Gburek*.

In *Gburek*, a borrower sued his mortgage servicer, alleging that letters sent by the servicer and another company on behalf of the servicer violated the FDCPA. *Gburek*, 614 F.3d at 382-83. The court identified a number of factors that courts may consider in determining whether a communication was made in connection with the collection of a debt, including whether

payments were past due, whether the debt collector demanded payment, whether the communication was made to induce the debtor to settle the debt, and the relationship between the parties. *Id.* at 384-86. The court held unequivocally that a debt collector need not demand payment for the FDCPA to apply. *Id.* at 385.

Applying the factors outlined in *Gburek* to this case, it is undisputed that Plaintiff's payments were past due; the letters in fact provide a "Total Amount Due" and request payment, and threatens a late fee if payment is not made by a date certain. Dkt.#30, Ex.B. The purpose of Rushmore's communications was thus to induce Plaintiff pay a debt in an amount owed. In fact, the letters at issue **expressly state** that Rushmore "is attempting to collect a debt". *Id.* Plaintiff and Rushmore also have no relationship other than debt collection, as Rushmore is the servicer to which payments are made. *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 875-76 (N.D. Ill. 2015). These factors all point to the conclusion that Rushmore's communications were made to collect a debt. No reasonable fact-finder could find otherwise.

As noted, the statements themselves each indicate that it is an attempt to collect a debt. Specifically, the Mortgage Statement indicates in part that it is not an attempt to collect a debt "if you are in Bankruptcy or received a Bankruptcy Discharge of this debt." Dkt.#30, Exhibit B. Plaintiff is not in Bankruptcy and has not received a Bankruptcy Discharge of the alleged debt, so by the Statement's own terms, it is an attempt to collect a debt." Dkt.#30, ¶¶ 19-22. The statements thus indicate, on their face, that they are **intended** to be an attempt to collect a debt. Rushmore's argument to the contrary is thus unavailing.

    A.    **The CFPB "Exemption" Has No Applicability to The Facts in This Case**

Further, Rushmore argues that it is immune to FDCPA liability because it used a template provided by the CFPB: Bulletin 2013-12. Dkt.#30, p. 7. Rushmore acknowledges, however, that

Bulletin 2013-12 was issued only in connection with a scenario where a cease-communication request has been made. ("Although Bulletin 2013-12 was specifically concerned with the sending of account statements to borrowers who had requested that communications cease, however…") *Id.* at p. 8. Moreover, the only case in this District to have analyzed the applicability of the Bulletin to fact patterns outside of a request to cease-communication has found that the FDCPA does apply to mortgage servicers, and the CFPB has not found otherwise. *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 873 (N.D. Ill. 2015) (stating "The CFPB only exempted mortgage servicers from FDCPA liability when a borrower has "instructed the servicer to cease communicating with them." *Id*. Matmanivong did not request that NCCI or Bank of America cease communications. Thus, none of those exemptions apply in this case. By specifying instances in which the FDCPA does not apply, the CFPB clearly intended the FDCPA to apply to mortgage servicers that are debt collectors in all other instances."). As with *Matmanivong*, Plaintiff here did not request that Rushmore cease communications. As such, the exemption created by the CFPB does not apply to these facts.

   **B.**  **Rushmore's Attempt to Seek Dismissal by Referring to Document Outside of the Pleadings is Improper, and Its Argument Based Thereon Should Be Disregarded**

Rushmore's argument based on an Exhibit attached to its Motion, specifically CFPB Bulletin 2013-12. Dkt.#30, p. 7, is not based on any document attached to the operative complaint, or even referenced therein. Because Rushmore's Motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, such document cannot be considered by the Court. Dkt.#30.

In response to an ordinary Rule 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster. *General Electric Capital Corp. v. Lease*

*Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)), A court is not to consider documents or allegations extrinsic to the pleadings on a Rule 12(b)(6) motion. *Id.* The pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits. See, e.g., Fed. R. Civ. P. 7; Fed. R. Civ. P. 10(c); *Hirata Corp. v. J.B. Oxford and Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) (collecting cases).

If a district court considers matters outside the pleadings, the procedural rules require that "the motion shall be treated as one for summary judgment" under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). When proceeding on such a converted motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Consideration of outside matter without converting the Rule 12(b)(6) motion into a Rule 56 motion can produce reversible error. See *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1431 (7th Cir. 1996).

Here, the document attached to Rushmore's Motion is outside the pleadings, requiring that the Court disregard the same unless it converts the motion to one for summary judgment. However, it would prejudice the Plaintiff to be required to respond to Rushmore's motion without engaging in discovery as to Rushmore's factual and legal basis for attempting to collect late fees. Rushmore's motion should thus be denied to the extent it relies on the letter that it attaches to its Motion, extrinsic to the pleadings, that it uses to support its argument for dismissal.

**IV.    Rizzo Supports Plaintiff's Position**

Rushmore discounts the 7th Circuit opinion of *Rizzo* as it applies to the facts at issue. Specifically, Rushmore states as follows:

> **Rodriguez's reliance on Rizzo is odd because Rizzo supports Rushmore's position. Rizzo, like Rodriguez, claimed that late fees are not recoverable for missed post-acceleration monthly payments, and any effort to collect such late fees violates § 1692f of the FDCPA. Rizzo, 351 F.3d at 792-94. But the Seventh Circuit expressly rejected that argument. Id. at 793. Rizzo's mortgage allowed Rizzo to reinstate if he paid the lender "all sums which would be then due under this Mortgage and the Note had no acceleration occurred." *Id.*** Dkt.#30, p. 10

What Rushmore either ignores, or strategically refuses to acknowledge, it that unlike the consumer in *Rizzo*, who reinstated the note and mortgage, Plaintiff here has alleged unequivocally that she did not at any time seek to reinstate. Dkt.# 28, ¶¶29-33. Indeed, *Rizzo* makes this very distinction, stating: "Plaintiff cites to sixteen cases in an attempt to support his position that post-acceleration late fees are unlawful. These cases uniformly stand for the proposition that a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated. **However, not one of those cases address the issue before us today. The distinguishing characteristic of this case is the fact that the plaintiffs reinstated the note and mortgage**." *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793-94 (7th Cir. 2003) (emphasis added).

In *Rizzo*, the note provided for late fees when a monthly payment has not been made within fifteen days of the date on which it was due. *Id.* at 793. The reinstatement provision of the mortgage language required payment of *all sums* "which would *then* be due . . . *had no acceleration occurred*." *Id.* The effect of this, from the plain language of the instrument, was found by the Court to be retroactive; the monthly payments were deemed to have been due each and every month on the dates set out in the mortgage and note. *Id.* The Court found this language to unambiguously require plaintiffs to pay the late fees. *Id.* at 794. *Frederick v. Prof'l Truck Driver Training Sch.*, 328 Ill. App. 3d 472, 481, 765 N.E.2d 1143, 262 Ill. Dec. 535 (1st Dist. 2002).

The Court further found it undisputed that the Rizzos did not make a certain number of monthly payments. *Id.* Because of this failure, foreclosure was sought by the lender. *Id.* **In order to avoid foreclosure, the Rizzos <u>reinstated</u> the mortgage**. *In so doing*, plaintiffs had to pay "all sums which would be then due under this Mortgage and the Note had no acceleration occurred." *Id.* (emphasis added). Rushmore thus ignores a key distinction in this case, from the borrower in *Rizzo*: Plaintiff asserts that at no time did she seek reinstatement, unlike Rizzo, who did. The *Rizzo* opinion even recognizes the merit of Plaintiff's position in this case, stating:

> **Plaintiff continues to Plaintiffs repeatedly argue "if late charges are tied to overdue 'monthly payments,' the absence of any 'monthly payment' obligation after acceleration and before reinstatement precludes the imposition of late charges for that period." (Br. of Appellants at 17.) This argument is flawed in that it claims there is an absence of an obligation to make monthly payments after acceleration. <u>While this may be the case when the borrower does not seek to reinstate, it is not the case here.</u> As discussed above, it is clear that the obligation to make monthly payments is retroactively applied when the borrower seeks to reinstate. <u>Since</u> the plaintiffs reinstated their mortgage, monthly payments became retroactively due. Plaintiffs' argument fails on its face.** *Id.* at 794 (emphasis added)

Thus, the opinion in *Rizzo* expressly acknowledges Plaintiff's argument here: that the absence of monthly payment obligations after acceleration and before reinstatement precludes the imposition of late charges for that period, when a borrower does not reinstate a mortgage. Imposition of late charges as Rushmore sought in this case thus violates sections 1692e and 1692f of the FDCPA, as such fees are not legally allowed, and Rushmore's attempt to collect them is thus false and misleading to an unsophisticated consumer. Dkt. #28, ¶¶33-42. Rushmore's motion should thus be denied.

V. **Rushmore Falsely Claims that the Statements Contain the Reinstatement Amount**

As recognized in *Rizzo*, in order to avoid foreclosure, the Rizzos reinstated the mortgage. *Rizzo*, 351 F.3d at 794. In so doing, plaintiffs had to pay "all sums which would be then due under this Mortgage and the Note had no acceleration occurred." *Id.*

With respect to the statements at issue, one of the statements indicates that $56,858.05 is the "Total Amount Due". Dkt.#30, Exhibit B. However, if Plaintiff would have paid the "Total Amount Due", she would still owe more money—as admitted by Rushmore—in attorney fees. Dkt.# 30, p. 15, stating ("And while the account statements do not include an exact figure for attorneys' fees…"). The $56,858.05 was therefore not the reinstatement amount, *that* amount was in fact more, and the statement was not meant to communicate the reinstatement amount. This is further supported by the fact that footnote 5 to Exhibit B recognizes that the amount stated as being the "Total Amount Due" may not be "the full amount necessary to bring the account current". Dkt.#30, Exhibit B, FN 5. It is thus a confusing statement to an unsophisticated consumer: Plaintiff could pay the "Total Amount Due", only to find that more money is owed.

Rushmore argues that this is not confusing; that stating a "Total Amount Due" in an amount certain cannot be confusing to an unsophisticated consumer even when further amounts may be due, as such is "a necessary concession to reality". Dkt.#30, p. 15. Plaintiff disagrees. There is nothing stopping Rushmore from including exact attorney fees owed up to the statement cut-off date. If it could not or refuses to do so, it is wholly unreasonable to nonetheless misrepresent that an amount **is** the "Total Amount Due", when it knows this statement is false, since more fees are due than those stated.

An unsophisticated consumer could thus be fooled by Rushmore's presentation: if more money was owed than that stated as being the "Total", which Rushmore seems to admit was the fact in this case, then the statement that $56,858.05 was the "Total Amount Due" was false on its face. If this is the case, the varying amounts cannot both be correct, and thus at least one is false. *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). "[w]hen there are two different accounts of what a debtor actually owes a creditor, that one version is the correct description does not save

the other, since under the unsophisticated consumer standard, 'a letter may confuse even though it is not internally contradictory."); See also *Pickard v. Lerch*, No. 1:03-cv-1688-LJM-WTL, 2005 U.S. Dist. LEXIS 45457, at *7-8 (S.D. Ind. May 26, 2005).

The case of *Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-03656, 2018 U.S. Dist. LEXIS 54898, at *9 (N.D. Ill. Mar. 30, 2018) supports Plaintiff's argument, and discounts the same argument made by Rushmore here. There, the Court stated "First of all, the words "Total Amount" would suggest, to an unsophisticated consumer, that if the consumer pays the amount on the letter, the debt would be discharged. That is what "Total" presumably means. Also, the as-of date is the exact same on each document. Nor do the documents communicate that there are other, unrelated charges due as of April 14, 2016… Viewed through the lens of the unsophisticated consumer standard, and giving Rodriguez all reasonable inferences at this pleading stage, she states an FDCPA claim. *See* 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of the "character, amount, or legal status of any debt ... ."); *id.* § 1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt ... .")." *Id.* Accordingly, to the extent that Rushmore's representation that the statements indeed provided a reinstatement amount is relevant, the above facts and case law supports that the amount provided by Rushmore was not a reinstatement amount, was provided in a confusing manner, and Plaintiff did not at any time seek a reinstatement amount from Rushmore.

## **CONCLUSION**

Based on the foregoing argument and authorities, Plaintiff respectfully requests that Rushmore's Motion be denied. Should the Motion be granted, Plaintiff requests leave to file an amended complaint to cure any pleading defects found by the Court.

By: /s/Mario Kris Kasalo
Attorney for Plaintiff
**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, Illinois 60602
Tele 312- 726-6160
Fax 312-698-5054
mario.kasalo@kasalolaw.com

## CERTIFICATE OF SERVICE

I, Mario Kris Kasalo, an attorney, hereby certify that on July 27, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: July 27, 2018**



BY: /s/ Mario Kris Kasalo
Mario Kris Kasalo