**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATRICIA RODRIGUEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RUSHMORE LOAN MANAGEMENT ) <br> SERVICES LLC, ) <br> ) <br> Defendant. ) | Case No. 18-cv-1015 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patricia Rodriguez ("Plaintiff"), on behalf of herself and a proposed class, brings suit against Defendant Rushmore Loan Management Services LLC ("Defendant") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Currently before the Court is Defendant's motion to dismiss Plaintiffs' first amended complaint ("Complaint") for failure to state a claim [30]. For the reasons explained below, Defendant's motion [30] is granted.

**I.      Background[1]**

The Complaint alleges that Plaintiff is an Illinois resident from whom Defendant attempted to collect a consumer debt, which Plaintiff allegedly owed for a defaulted mortgage loan ("Mortgage") that originated with Citicorp Trust Bank, FSP ("Citicorp"). See [28-1] at 6-21 (copy of Mortgage). According to the Complaint, Plaintiff is a "consumer" and Defendant is a "debt collector" as those terms are defined by the FDCPA.

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pled allegations set forth in the Complaint [28]. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

After Plaintiff obtained her Mortgage from Citicorp, the Mortgage was transferred to Christiana Trust. See [28] at 3, ¶ 13. According to Defendant, Plaintiff failed to make required payments on the Mortgage and therefore went into default. Defendant, a loan servicer, began servicing the Mortgage on behalf of Christiana Trust after Plaintiff went into default. See *id.* at 3, ¶ 15. Defendant was authorized to attempt to collect Plaintiff's alleged debt on behalf of Christiana Trust. *Id.* at 4, ¶ 16. On January 5, 2016, Christiana Trust filed a lawsuit against Plaintiff in the Circuit Court of Cook County, Illinois ("State Action") to collect the alleged debt. The complaint in the State Action indicates that Plaintiff stopped making her required monthly installment payments on the Mortgage in March 2015.

Around August 11, 2017, Defendant mailed Plaintiff a "Mortgage Statement." See [28-1] at 37-40. At this point, the Mortgage had been accelerated and a demand had been made on Plaintiff for the full amount due on the Mortgage. In a box on the first page of the Mortgage Statement, it states: "Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt." *Id.* at 37. The same notice is repeated on the bottom of the third page of the Mortgage Statement. *Id.* at 39. Plaintiff is not in bankruptcy and has not received a bankruptcy discharge.

The first page of the Mortgage Statement shows the "Amount Due" as $56,858.05. Right under that, it states: "If payment is received after 09/16/2017, a $67.21 late fee will be charged." [28-1] at 37. The first page of the Mortgage Payment states:

**Explanation of Amount Due**[5]
Principal                                  $528.96

| | |
|---|---|
| Interest | $815.27 |
| <u>Escrow (for Taxes and Insurance)</u> | <u>$468.22</u> |
|    Regular Monthly Payment | $1,812.45 |
| Total Fees and Charges | $672.10 |
| <u>Overdue Payment</u> | <u>$54,373.50</u> |
| **Total Amount Due** | **$56,858.05** |
| Partial Payment (Unapplied) | $0.00 |

Footnote 5 on the same page states: "**Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement." [28-1] at 37.

The second page of the Mortgage Statement contained a "Delinquency Notice, which lists the missed monthly payments and states: "Total: $56,858.05 due. You must pay this amount to bring your loan current. IF YOU ARE IN FORECLOSURE OR BANKRPUTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this Statement." [28-1] at 38. Right under that, it says, "Your loan is in Foreclosure." *Id*.

Defendant sent Plaintiff additional Mortgage Statements on September 12, 2017 (see [28-1] at 42) and October 11, 2017 (see [28-1] at 47), in the same format and including the same information as the August 11, 2017 Mortgage Statement. Plaintiff never sought to reinstate the Mortgage.

The Complaint alleges that Defendant's Mortgage Statements violate Sections 1692e and 1692f of the FDCPA. Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and contains a non-exclusive list of conduct that violates this section. 15 U.S.C. § 1692e. The Complaint alleges, in essense, that Defendant violated this provision by threatening to impose late fees that Defendant

was not legally entitled to impose, since Plaintiff's Mortgage had been accelerated and Plaintiff had not sought to reinstate it.

Section 1692f of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt" and, like Section 1692e, contains a non-exclusive list of conduct that violates this section. See 15 U.S.C. § 1692f. Plaintiff alleges that Defendant violated this provision "'by attempting to collect amounts from Plaintiff that were not authorized by the agreement creating the debt or permitted by law, including but not limited to a 'late fee.'" [28] at 8. Plaintiff seeks an award of statutory damages, attorneys' fees, costs, and any other relief that the Court deems proper.

Currently before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

**III.     Analysis**

Defendant argues that the Complaint must be dismissed because it does not allege that Plaintiff complied with the Mortgage's notice and cure requirement. In particular, section 20 of the Mortgage states, in part, that:

> Neither Borrower nor Lender may commence *** any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[28-1] at 16.

Defendant explains that Plaintiff is the "Borrower" as that term is used in the Mortgage. Defendant further explains that although it is not the "Lender"—rather, it is the servicer of the Mortgage—it is entitled to enforce the notice and cure provision as an assignee of the Lender. Specifically, section 13 of the Mortgage provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." [28-1] at 15. According to Defendant, the notice and cure provision applies to Plaintiff's suit because it arises from Defendant's action pursuant to the mortgage, including its imposition of post-acceleration late fees, which, according to Defendant, are authorized by sections 1 and 19 of the Mortgage. Defendant cites to one case from this district and a handful of out-of-circuit cases (which are discussed below) for the proposition that FDCPA claims are properly dismissed when the borrower fails to affirmatively plead that she complied with her contract's notice provision.

Plaintiff makes several arguments in response. First, Plaintiff argues that her lawsuit does not arise from Defendant's actions pursuant to the Mortgage—since the Mortgage allegedly does

5

not specify the circumstances under which late fees may be applied or in what amount, but instead arises from the FDCPA. The Court is not persuaded by this argument. The Mortgage requires Plaintiff to pay late charges that are properly due under the mortgage, see [28-1] at 3, § 1, and also conditions Plaintiff's right to reinstate the Mortgage after acceleration on her "pay[ing] Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred," *id*. at 16, § 19. The Seventh Circuit has interpreted such language to require a mortgagor who seeks reinstatement of a mortgage following acceleration to pay late fees for each monthly payment missed by the mortgagor prior to acceleration. *Rizzo v. Pierce & Associates*, 351 F.3d 791, 793-94 (7th Cir. 2003). Of course, the parties disagree about whether these provisions authorize Defendant to impose late fees under the particular facts of this case, where Plaintiff has not sought to reinstate the Mortgage. But that dispute nonetheless "arises from" actions that Defendant purportedly took pursuant to the Mortgage—in particular, adding late fees to the amount that Defendant told Plaintiff would be due if Plaintiff were to bring her mortgage current.

This stands in contrast to both cases relied upon by Plaintiff. In *St. Breux v. U.S. Bank, Nat'l Ass'n*, 919 F. Supp. 2d 1371 (S.D. Fla. 2013), the plaintiff's FDCPA lawsuit was based on the defendant's alleged failure to comply with a statutory duty under the Truth in Lending Act to identify and provide contact information for the loan's master servicer. *Id.* at 1375. In *Foster v. Green Tree Servicing, LLC*, 2017 WL 5151354, at *3 (M.D. Fla. Nov. 3, 2017), the plaintiff's FDCPA claim and related state consumer protection claim were based on allegations that the defendant attempted to collect a debt while knowing that the plaintiff was represented by counsel. *Id.* at *3. The duty to refrain from communicating with a consumer who is represented by an attorney came from the FDCPA, not the mortgage. See 15 U.S.C.§ 1692c(a)(2). Further, the Court

does not find the reasoning of *Foster* particularly persuasive. The court determined that the notice and cure provision did not apply to the plaintiff's FDCPA claim and related state consumer protection claim because the claims, "albeit related to the mortgage and Green Tree's efforts to procure mortgage payments, do not allege a breach of the mortgage or any duty arising therefrom" but rather "arise from alleged violations of consumer protection statutes." *Foster*, 2017 WL 5151354, at *3. But the court did not acknowledge or analyze language in the mortgage's notice and cure provision that made the provision applicable not only to actions that alleged a breach of the mortgage, but also to actions "that arise[] from the other party's actions pursuant to" the mortgage. *Id*. at *2.

All of the other relevant cases that the parties cite or that the Court has located in its own research come down on the side of enforcing the notice and cure provision in cases where the plaintiff brings a statutory claim that is based on actions that the defendant took pursuant to the plaintiff's mortgage. For instance, in the only in-circuit case cited by the parties, *Michael v. CitiMortgage, Inc.*, 2017 WL 1208487 (N.D. Ill. Apr. 3, 2017), Judge St. Eve interpreted a notice and cure provision which, like the provision in Plaintiff's Mortgage, stated: "Neither Borrower nor Lender may commence *** any judicial action *** that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party *** of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action." *Id*. at *3. Relying on several cases in which other courts "dismissed claims, including RICO and FDCPA claims, against mortgage lenders relating to property-inspection fees where *** the borrower-plaintiffs failed to plead compliance with the notice-and-cure provisions in mortgage contracts," Judge St. Eve dismissed

7

the plaintiff's RICO and FDCPA claims against CitiMortgage because all of those claims "ar[ose] out of and are entirely based on the property fees that were charged pursuant to her mortgage contract." *Id*. at *4 (citing *Giotta v. Ocwen Fin. Corp.*, 2016 WL 4447150, at *5-6 (N.D. Cal. Aug. 24, 2016); *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *3 (S.D. Fla. July 2, 2015); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010); *LaSalle Bank Nat. Ass'n v. Mudd*, 2003 WL 22048158, at *2 (N.D. Ill. Aug. 29, 2003)).

*Michael* is in accord with all of the other cases that the parties have cited or that the Court has found which address the application of mortgage notice and cure provisions to statutory claims like Plaintiff's. See *Giotta v. Ocwen Loan Servicing, LLC*, 706 Fed. Appx. 421, 422 (9th Cir. 2017) (holding that notice provision covering "any judicial action *** that arises from the other party's actions pursuant to this Security Instrument" applied to plaintiffs' claim that debt servicer violated the FDCPA by billing for attorneys' fees and property inspection and valuation fees without disclosing the profit structure of the third-party entity that conducted the service and concluding that the district court properly dismissed the claim based on plaintiff's failure to comply with the notice provision); *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, at *2 (S.D. Fla. Mar. 3, 2018) (notice and cure provision applied to plaintiff's FDCPA claims, which arose out of defendant's notice to plaintiff that mortgage was in default and alleged errors in default amounts, because such claims "clearly relate to the Mortgage"); *Sandoval v. Wolfe*, 2017 WL 244111, at *3–4 (S.D. Fla. Jan. 19, 2017) (notice and cure provision applied to plaintiff's RESPA and FDCPA claims, which were based on defendant's imposition of a disputed attorney fee, where the claims all arose out of plaintiff's mortgage and her efforts to reinstate the mortgage); *Sotomayor v. Deutsche Bank Nat'l Trust Co. et al.*, 2016 WL 3163074, at *2-3 (S.D. Fla. Feb. 5, 2016) (notice and cure provision applied to plaintiff's claims for alleged violations of

the FDCPA arising from allegedly inflated property inspection fees and a payoff statement that was inaccurate due to the inclusion of the inflated fees); *Charles v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (notice and cure provision applied to TILA, RESPA, FDCPA, and FCRA claims where "all of Plaintiff's allegations arise from actions taken pursuant to the Deed of Trust"); *Hill*, 2015 WL 4478061, at *3 (notice and cure provision applied to RICO, breach-of-contract, and unjust-enrichment claims that all related to collection of property-inspection fees because plaintiffs' "claims are entirely based on their mortgage contract"); *Niyaz v. Bank of Am.*, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011) (notice and cure provision applied to plaintiff's National Housing Act claim where "all of plaintiff's allegations arose from actions taken pursuant to the Deed of Trust"); *Johnson*, 2010 WL 5138392, at *2 (notice and cure provision applied to plaintiff's TILA, RESPA, FDCPA, and FCRA claims because "all of Plaintiff's allegations arise from actions taken pursuant to the Deed of Trust").

Plaintiff also argues that she was not required to comply with the notice and cure provision before filing suit because that provision applies only to actions between Plaintiff and her Lender, not Plaintiff and her servicer (Defendant). However, Plaintiff does not directly address the Mortgage's assignment provision, section 13, which provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." [28-1] at 15. Nor does Plaintiff counter Defendant's representation that it is an "assign" of the lender.[2] This representation is consistent with the factual allegations of the Complaint, which are that the original Lender, Citicorp, transferred the Mortgage to Christiana Trust, that Defendant serviced the loan on behalf of Christiana Trust, and that Defendant was

---

[2] Plaintiff appears to have abandoned the position she took in her Complaint that Defendant "is not an assign of the lender to which the alleged debt was incurred." [28] at 2. And even if Plaintiff stands by her pleading, the Court need not accept as true the Complaint's legal conclusion regarding whether Defendant is an "assign." See *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 825 (7th Cir. 2018).

9

authorized to attempt to collect Plaintiff's alleged debt on behalf of Christiana trust. See [28] at 3, ¶¶ 13, 15. Further, Defendant's representation that it is an assign under the Mortgage is consistent with other language in section 20 of the Mortgage, which according to Plaintiff "defines 'Loan Servicer' as the entity that collects periodic payments 'due under the Note, this Security Instrument, and Applicable Law.'" [37] at 6. The Mortgage gives Defendant, as the loan servicer, an "identifiable interest" interest in the Mortgage—*i.e.* "[a]n assignment." *Illinois Tool Works, Inc. v. Commerce and Industry Ins. Co.*, 962 N.E.2d 1042, 1048 (Ill. App. 2011).

In *Giotta*, the Ninth Circuit interpreted an identical assignment provision to apply to a mortgage servicer and give it a right to enforce a mortgage's notice and cure provision. 706 Fed. Appx. at 422. The Ninth Circuit held that although the mortgage servicer was not the defined "Lender," it had been assigned the servicing rights to the loan and thus could benefit from the mortgage's notice and cure provision. *Id*. The Southern District of Florida has come to the same conclusion in multiple cases. See, e.g., *Kurzban*, 2018 WL 1570370, at *3 (rejecting argument that "because Defendant is a servicer and not a party to the Mortgage, the notice-and-cure provision does not apply" because "Courts in this district consistently hold that a notice-and-cure provision in a mortgage applies to actions against a servicer"). Plaintiff here alleges that the original Lender, Citicorp, transferred the Mortgage to Christiana Trust, that Defendant serviced the loan on behalf of Christiana Trust, and that Defendant was authorized to attempt to collect Plaintiff's alleged debt on behalf of Christiana trust. See [28] at 3, ¶¶ 13, 15.

While ignoring the assignment provision, Plaintiff argues that the Court cannot read section 20 to apply to Defendant because doing so would violate "the doctrine of *expressio unius est exclusio alterius*," which "instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded." [36] at 7. In particular, Plaintiff

contends that because the Loan Servicer is referred to by name in the first paragraph of section 20 of the Mortgage (which explains that the note securing the Mortgage may be sold and that a sale may result in a change in the Loan Servicer that collects the periodic payments due under the Mortgage), then "Lender" as used in the second paragraph of section 20 cannot be read to include the loan servicer. However, the two paragraphs of section 20 do not address the same "matters." The first notifies the Borrower that the Mortgage may be sold and that the Loan Servicer may change, while the second requires the Borrower and Lender to provide notice of certain claims. Further, the maxim of *expressio unius est exclusio alterius* is not to followed to the extent it would override a different intent that is clearly expressed. *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 668 (7th Cir. 2008). Plaintiff's application of the maxim would require the Court to disregard the Mortgage's assignment provision, which gives the successors and assigns of Lender the benefits of the Mortgage's "covenants and agreements," [28-1] at 15, regardless of whether the successors and assigns are specifically named in the particular covenant or agreement of the Mortgage that they seek to enforce.

For these reasons, the Court concludes that Plaintiff was required to comply with the Mortgage's notice and cure provision prior to filing this suit. Because Plaintiff does not allege that she did so, the Complaint must be dismissed.

## IV. Conclusion

For these reasons, Defendant's motion to dismiss [30] is granted. This dismissal is without prejudice to Plaintiffs' opportunity to file a timely motion for leave to file a second amended complaint by March 4, 2019, if she believes she can do so consistent with this Court's opinion and Rule 11. If no motion is filed by that date, the Court will enter an order converting the dismissal to be with prejudice and will enter a Rule 58 final judgment.

11

Dated: February 4, 2019

  _____
  Robert M. Dow, Jr.
  United States District Judge